1

2

3

4

5

6

7

8                     **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   FRANCIS M. SHARPE,                    NO. CV 13-01557 SS

12              Plaintiff,                 **MEMORDANDUM AND ORDER**

13      v.

14   CAROLYN W. COLVIN, Commissioner
     of the Social Security
15   Administration,

16              Defendant.

17

18

19

20

21

22

23

24

25   \\

26   \\

27   \\

28

## I.

### INTRODUCTION

Francis M. Sharpe ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

## II.

### PROCEDURAL HISTORY

On July 23, 2009, Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). (AR 177, 180). In both applications, Plaintiff alleged a disability onset date of March 1, 2008. (Id.). The Agency denied Plaintiff's applications on October 1, 2009. (AR 99-100). On December 3, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 111-12). Plaintiff appeared and testified at a hearing held before ALJ Dennis T. Bennett on August 16, 2010. (AR 10). The hearing was continued because Plaintiff's representative did not appear at the hearing. (Id.). The ALJ also ordered consultative examinations in neurology and psychiatry. (Id.). Plaintiff appeared and testified at a second hearing before the ALJ on

2

April 4, 2011.  (Id.).  At the conclusion of the hearing, the ALJ ordered a consultative examination in psychology.  (Id.). Plaintiff appeared and testified before the ALJ for a third time on August 16, 2011.  (AR 11).  On August 26, 2011, the ALJ issued a decision denying Plaintiff DIB and SSI.  (AR 26).  Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on February 5, 2013.  (AR 1-3).  Plaintiff filed the instant action on March 15, 2013.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920. The steps are:

\\

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an

4

affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen

5

1  v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v.

2  Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

3

4      "Substantial evidence is more than a scintilla, but less

5  than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson

6  v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

7  evidence which a reasonable person might accept as adequate to

8  support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066;

9  Smolen, 80 F.3d at 1279). To determine whether substantial

10 evidence supports a finding, the court must "'consider the record

11 as a whole, weighing both evidence that supports and evidence

12 that detracts from the [Commissioner's] conclusion.'" Aukland,

13 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th

14 Cir. 1993)). If the evidence can reasonably support either

15 affirming or reversing that conclusion, the court may not

16 substitute its judgment for that of the Commissioner. Reddick,

17 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457

18 (9th Cir. 1995)).

19

20                              **V.**

21                          **DISCUSSION**

22

23     Plaintiff challenges the ALJ's decision on three grounds.

24 First, Plaintiff argues that at step two of the five-step

25 inquiry, the ALJ improperly concluded that Plaintiff did not

26 suffer from the severe medically determinable impairment of

27 fibromyalgia. (Memorandum in Support of Plaintiff's Complaint

28 ("MSPC") at 6-15). Second, Plaintiff claims that the ALJ

1   improperly rejected treating physician Dr. Peter Balacuit's
2   conclusion that Plaintiff was disabled and unable to work.  (Id.
3   at 24-27).   Third, Plaintiff asserts that the ALJ erred by
4   disregarding her subjective testimony concerning her symptoms.
5   (Id. at 15-24).   The Court agrees that the ALJ incorrectly
6   determined that Plaintiff did not suffer from the severe
7   medically determinable impairment of fibromyalgia.   Plaintiff's
8   treating physicians left no doubt that Plaintiff suffered from
9   fibromyalgia, and the ALJ did not provide clear and convincing
10  reasons for rejecting these opinions.   Furthermore, though the
11  ALJ was not bound by Dr. Balacuit's opinion that Plaintiff
12  qualified as disabled, he failed to offer sufficient reasons for
13  rejecting the doctor's medical conclusions.   Finally, to the
14  extent the ALJ rejected Plaintiff's subjective testimony and
15  found her lacking credibility because of his earlier conclusion
16  that she did not suffer from fibromyalgia, the ALJ erred.
17  Accordingly, for the reasons discussed below, the decision is
18  REVERSED and REMANDED for further proceedings consistent with
19  this decision.

20

21  **A.   The ALJ Improperly Concluded That Plaintiff Did Not Suffer**
22       **From The Severe Medically Determinable Impairment Of**
23       **Fibromyalgia**

24

25       **1.   Legal Standard**

26

27       At step two of the five-step inquiry, the ALJ concluded that
28  Plaintiff did not suffer from the severe medically determinable

1   impairment of fibromyalgia.  (AR 15).  In his final decision, the

2   ALJ explained "[t]here [wa]s no objective evidence to support

3   this allegation; it is a symptom." (Id.).  He concluded that

4   although treating physician Dr. Susan Buhay[1] stated that

5   Plaintiff had "multiple tender points over her trunk and

6   extremities" in August and October 2008, she never affirmatively

7   diagnosed Plaintiff with fibromyalgia. (Id.)  Furthermore, there

8   was no evidence of a "tender point examination sufficient to

9   support a fibromyalgia diagnosis from any treating or examining

10  sources." (Id.).   The ALJ also found that Plaintiff had "no

11  active synovitis of her joints[,]" scored in the normal range for

12  rheumatoid factor on lab testing performed in September 2008,

13  consistently had normal motor and sensory function, as well as

14  normal range of motion in all extremities, normal muscle strength

15  and bulk, no evidence of atrophy or posturing, normal muscle

16  tone, fine motor skill, a normal gait, normal sensation, a

17  negative Romberg's sign, and normal reflexes.[2] (Id.).

18  _____

19  [1]   The ALJ referred to Dr. Buhay as an "examining physician."
    (AR 15).  However, Dr. Buhay not only performed numerous
20  rheumatologic examinations on Plaintiff between August 2008 and
    June 2009, she also prescribed Plaintiff medication and regularly
21  consulted with Plaintiff's primary care physician, Dr. Balacuit,
    concerning her health and treatment.  (See AR 319-44).
22  Accordingly, Dr. Buhay qualified as a "treating source" within
    the meaning of 20 C.F.R. § 404.1502.
23

24  [2]   The ALJ also expressed strong skepticism about Plaintiff's
    fibromyalgia during the August 16, 2011 administrative hearing.
25  First, the ALJ concluded that a report from consulting
    neurologist Dr. James Lin indicated that Plaintiff did not suffer
26  from fibromyalgia.  (AR 65).  Second, he rejected a medical
    record from Plaintiff's rheumatologist, Dr. Dan La, which
27  indicated that Plaintiff suffered from fibromyalgia, because only
    a physician's assistant's signature appeared on the document.
28  (AR 69).  Third, the ALJ found the record lacked any tender

1    By its own terms, the evaluation at step two is a de minimis

2 test intended to weed out the most minor of impairments.   See

3 Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L.

4 Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th

5 Cir. 2001) (quoting Smolen, 80 F.3d at 1290) (stating that the

6 step two inquiry is a de minimis screening device to dispose of

7 groundless claims).   An impairment is not severe only if the

8 evidence establishes "a slight abnormality that has no more than

9 a minimal effect on an individual['s] ability to work." Smolen,

10 80 F.3d at 1290 (internal quotations marks omitted).

11

12    In the context of fibromyalgia, the Ninth Circuit has

13 recognized that objective findings "do not establish the presence

14 or absence of [the disease]." Jordan v. Northrop Grumman Corp.

15 Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004).   Because

16 "fibromyalgia's cause or causes are unknown, there is no cure,

17 and, of greatest importance to disability law, its symptoms are

18 entirely subjective.   There are no laboratory tests for the

19 presence or severity of fibromyalgia." Id.   Accordingly, a

20 patient's subjective report of pain and symptoms is paramount for

21 diagnosing fibromyalgia, and it is error for an ALJ to require

22 objective evidence for a disease that eludes such measurement.

23 Benecke, 379 F.3d at 590, 594.

24 \\

25 \\

26 _____

27 points examination sufficient to establish the existence of
Plaintiff's fibromyalgia.   (AR 74).   Finally, he stated that
Plaintiff offered only unreliable "triple" and "quadruple"

28 hearsay to support her fibromyalgia claim.   (AR 81).

Here, there was ample evidence that Plaintiff suffered from the severe medically determinable impairment of fibromyalgia.

### 2. Plaintiff's Treating Physicians Universally Agreed She Suffered From Fibromyalgia

Plaintiff's treating physicians expressed no doubt that she suffered from fibromyalgia. Dr. Peter Balacuit was Plaintiff's primary care physician from 2008 through 2011. (AR 42-43, 292-318, 422, 597-623). In August 2008, Dr. Balacuit referred Plaintiff to Dr. Susan Buhay, a rheumatologist.[3] (AR 306). On August 25, 2008, after examining Plaintiff, Dr. Buhay wrote to Dr. Balacuit setting forth her findings regarding Plaintiff's condition. (Id.). The letter noted Plaintiff's "history of fibromyalgia and possible mixed connective tissue disease[]" and stated that Plaintiff's symptoms, which included generalized aches and pain, fatigability, headache and a poor sleeping pattern, were "suggestive of fibromyalgia." (Id.). On October 20, 2008, Plaintiff saw Dr. Buhay for a rheumatologic exam and, again, Dr. Buhay opined that Plaintiff's symptoms were "consistent with fibromyalgia." (AR 326). Dr. Buhay prescribed

---

[3]   As discussed below, the ALJ rejected Plaintiff's subjective testimony concerning her fibromyalgia because, in part, "[o]verall, treating physicians did not see fit to refer [her] to specialists." (AR 23). However, it is clear from the record that in or around August 2008, Dr. Balacuit referred Plaintiff to Dr. Susan Buhay, a rheumatologist and specialist in the field of medicine relevant to fibromyalgia. (AR 306); see also Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) ("Rheumatology is the relevant specialty for fibromyalgia.").

Plaintiff tramadol[4] 50 mg and ibuprofen 600 mg, both for daily use. (Id.). On June 29, 2009, Plaintiff visited Dr. Buhay specifically for her fibromyalgia, and Dr. Buhay noted that Plaintiff's "Presenting Problems or Diagnoses and/or Complications" included fibromyalgia. (AR 324).

In July 2010, Plaintiff was admitted to Methodist Hospital of Southern California ("Methodist Hospital") for severe bilateral numbness of the upper and lower extremities. (AR 522). Dr. Balacuit treated Plaintiff while she was admitted to Methodist Hospital and listed "Fibromyalgia syndrome" as one of Plaintiff's "Discharge Diagnoses." (AR 522, 528). Additionally, Dr. Kenneth Wogensen examined Plaintiff while she was at Methodist Hospital and opined in a neurology progress report that she suffered from fibromyalgia. (AR 535).

Less than three months later, on September 14, 2010, a physician's assistant[5] for Plaintiff's rheumatologist, Dr. Dan La, noted that Plaintiff was taking 50 mg of Savella[6] to treat her "FM[,]" or fibromyalgia. (AR 617). The physician's

---

[4]   Tramadol is a narcotic pain reliever used to treat moderate to moderately severe pain. See Nat'l Inst. of Health Website, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html.

[5]   A claimant may use evidence from a physician's assistant to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d)(1).

[6]   "Savella is an antidepressant indicated for the treatment of fibromyalgia." See Nicholson v. Colvin, 2013 WL 4058243, at * 7 n.27 (E.D. Mo. Aug. 12, 2013) (citing WebMD, http://www.webmd.com/drugs).

assistant also noted that Plaintiff's "major issue" was "FM pain."

These medical findings are strong evidence in support of Plaintiff's contention that she suffered from fibromyalgia. 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in support of his disability claim). The ALJ found that Dr. Buhay's medical notes were insufficient to establish Plaintiff's fibromyalgia because they did not affirmatively state a diagnosis or specify the number of tender points that Plaintiff experienced during her rheumatologic exam. (AR 15). However, Dr. Buhay consistently stated that Plaintiff's symptoms were consistent with fibromyalgia – indeed, she explicitly identified fibromyalgia as one of Plaintiff's "Presenting Problems or Diagnoses and/or Complications" in her medical notes. (AR 324). Accordingly, the ostensible import of the doctor's records was that Plaintiff's symptoms, including "multiple tender points over the trunk and extremities," (AR 326), supported a diagnosis of fibromyalgia. That Dr. Buhay did not use precise language in her medical notes cannot, contrary to the ALJ's suggestion, undermine the plain meaning of her records or preclude a finding that Plaintiff suffers from fibromyalgia. See Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for healthcare personnel – not to provide evidence for disability determinations."). Furthermore, Dr.

1   Buhay's opinions were entitled to significant weight because

2   "[s]pecialized medicine may be particularly important with

3   respect to a disease such as fibromyalgia that is poorly

4   understood within much of the medical community." Benecke, 379

5   F.3d at 594 n.4.

6

7       While the Court might share the ALJ's skepticism if Dr.

8   Buhay's findings were contradicted by other medical evidence,

9   medical records from Drs. Balacuit, Wogensen, La and Lin support

10  (or, at least fail to contradict) Dr. Buhay's fibromyalgia

11  diagnosis.   Most notably, Dr. Balacuit, who treated Plaintiff

12  extensively for more than four years, (AR 42-43, 292-318, 422,

13  597-623), clearly acknowledged Plaintiff's fibromyalgia when

14  Plaintiff was admitted at Methodist Hospital.   (AR 522, 528).

15  The ALJ argued that Dr. Balacuit provided "no explanation for his

16  opinions and failed to cite any specific diagnostic support from

17  his treatment records, for his opinion."   However, the ALJ did

18  not provide any reason to question Dr. Balacuit's competence or

19  motivations, and there is therefore no basis for rejecting the

20  doctor's fibromyalgia diagnosis.   Thus, the ALJ's conclusion at

21  step two, a de minimus test, ignored the opinions the vast

22  majority of medical evidence.[7]

23

24  _____
    [7]   A September 14, 2009 medical report prepared by examining

25  physician Dr. Shwachman also supported Plaintiff's fibromyalgia
    claim.   (AR 406-13).   Dr. Shwachman's report contained an

26  extensive list of Plaintiff's pain and fibromyalgia medications,
    which included Flexiril, Tramadol, Ibuprofen and Methocarbamol.

27  (AR 409).   Dr. Shwachman's report also indicated that Plaintiff
    experienced feelings of stabbing, burning or aching on at least

28  twenty-two points of her body (AR 411) – in other words, the

1        **3.     The ALJ Did Not Provide Clear and Convincing Reasons**
2               **For Rejecting The Opinions of Plaintiff's Treating**
3               **Physicians**

4

5        Where a treating physician's opinion is not contradicted by
6  another doctor, it may be rejected only for "clear and
7  convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
8  1996).  Even if the treating physician's opinion is contradicted
9  by another doctor, the ALJ may not reject this opinion without
10 providing specific, legitimate reasons, supported by substantial
11 evidence in the record.   Id.; Holohan v. Massarani, 246 F.3d
12 1195, 1202-03 (9th Cir. 2001).   The opinions of treating
13 physicians are entitled to special weight because the treating
14 physician is hired to cure and has a better opportunity to know
15 and observe the claimant as an individual.  Magallanes v. Bowen,
16 881 F.2d 747, 751 (9th Cir. 1989).

17

18        The ALJ relied on the opinion of consulting neurologist Dr.
19 James Lin to contradict the treating physicians' conclusions that
20 Plaintiff suffered from fibromyalgia.  (See AR 15).  On September
21 29, 2010, Dr. Lin opined that Plaintiff had normal range of
22 motion in all four extremities and was able to walk, move and sit
23 in alternative fashion.  (AR 564).  However, he also expressly
24 acknowledged that Plaintiff was being treated for a diagnosed
25 case of fibromyalgia and that her current medication was not
26 alleviating her pain.  (Id.).  Although Dr. Lin concluded that

27 ───────────────────────────────────
28 report included a thorough tender points examination, which the
   ALJ claimed did not exist. (See AR 15).

1  Plaintiff was being treated for lupus erythromatosis despite "no

2  clinical or laboratory findings to support the diagnosis," he did

3  not indicate that Plaintiff's fibromyalgia diagnosis was

4  incorrect. (Id.). Thus, Dr. Lin's report did not contradict the

5  opinions of Plaintiff's treating physicians; rather, Dr. Lin lent

6  credence to Plaintiff's fibromyalgia diagnosis by expressly

7  recognizing it and declining to question its medical validity.[8]

8

9      Finally, to the extent the ALJ rejected Plaintiff's claim

10 and her doctors' fibromyalgia diagnoses for want of objective

11 evidence, this was improper. (See AR 15, 66). As discussed

12 above, fibromyalgia "eludes [objective] measurement." Benecke,

13 379 F.3d at 594. Where a plaintiff consistently reports

14 fibromyalgia symptoms and her rheumatologist diagnoses her with

15 the disease, an ALJ may not deny its existence due to a lack of

16 supporting objective evidence or out of "sheer disbelief." Id.

17 Accordingly, the ALJ failed to provide adequate reasons for

18 rejecting the opinions of Plaintiff's treating physicians.

19

20 **B.   The ALJ Improperly Rejected Dr. Balacuit's Medical Opinions**

21

22     On July 23, 2010, Dr. Balacuit signed a letter certifying

23 that he believed Plaintiff qualified as disabled and was not fit

24 to return to work due to, inter alia, her fibromyalgia. (AR

25 ───────────────

[8]    The Administrative Record also contains physical residual

26 functional capacity forms prepared by nonexamining physicians
   Drs. Resnik and Geralds. (AR 356-60, 414-18). However, neither

27 addressed whether Petitioner suffered from fibromyalgia, (see
   id.), and the ALJ could not have relied on these reports to

28 contradict the opinions of Plaintiff's treating physicians. (AR

1  422).   The ALJ considered Dr. Balacuit's opinion regarding

2  Plaintiff's disability status and stated that it was not entitled

3  to the weight typically afforded treating physicians' opinions

4  because it went to an issue – i.e., the existence of a disability

5  – "reserved to the Commissioner." (AR 21).   Recognizing that he

6  was required to "consider the opinion and assign weight to it[,]"

7  the ALJ explained that he gave "greater weight to the opinion of

8  the medical consultant[.]"   (Id.).   He further noted that "Dr.

9  Balacuit provided no explanation for his opinion and failed to

10  cite any specific diagnostic support from his treatment records,

11  for his opinion."   (Id.).

12

13      Although an ALJ is "not bound by the uncontroverted opinions

14  of the claimant's physicians on the ultimate issued of disability

15  . . . he cannot reject them without presenting clear and

16  convincing reasons for doing so."   Reddick v. Chater, 157 F.3d

17  715, 725 (9th Cir. 1998) (internal quotation marks omitted).   A

18  treating physician's opinion on the ultimate issue of disability

19  may not be rejected, even if controverted, absent "specific and

20  legitimate reasons supported by substantial evidence in the

21  record."   Id.   The requirements for rejecting a treating

22  physician's medical opinion and opinion on a claimant's

23  disability are therefore comparable.   Id.

24

25      Here, the ALJ found the opinion of Dr. A. Resnik, a non-

26  examining consultative physician, more persuasive than that of

27  treating physician Dr. Balacuit.   (AR 21).   According to an

28  August 27, 2009 physical RFC form completed by Dr. Resnik,

Plaintiff was capable of occasionally lifting and/or carrying up to twenty pounds and could frequently lift and/or carry up to ten pounds.  (AR 356).  Plaintiff could also sit, stand and/or walk with normal breaks for up to six hours in an eight-hour work day, push and pull without limit, and frequently climb, stoop, kneel, or crawl.  (AR 358).  Additionally, Plaintiff was fit to occasionally balance and encountered no limitations reaching in any direction.  (Id.).

Although Dr. Resnik's assessment of Plaintiff's limitations appears to contradict Dr. Balacuit's statement that Plaintiff qualified for disability, "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995); Ryan v. Comm'r of Soc. Sec., 528 F. 3d 1194, 1202 (9th Cir. 2008) (citing Lester, 81 F.3d at 831).  Moreover, an ALJ's conclusory statement that a treating physician's opinion on the subject of disability is unsupported by medical evidence is insufficient to overcome the deference afforded treating doctors' conclusions concerning their patients.  See Reddick, 157 F.3d at 725 n.7 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objecting findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.")).  After treating Plaintiff extensively for years, referring her to specialists and

monitoring her health, Dr. Balacuit concluded that Plaintiff likely qualified for disability because she was unable to work. (AR 422). While this opinion was not binding on the ALJ or beyond reproach, the ALJ was required to muster, at a minimum, specific reasons supported by substantial evidence for rejecting Dr. Balacuit's conclusion. Neither Dr. Resnik's physical RFC assessment, which did not include any discussion of Plaintiff's medical history or conditions, (see AR 356-60), nor the ALJ's bare statement about the lack of objective medical evidence, met this standard.

**C.** **The ALJ Erred To The Extent He Rejected Plaintiff's Subjective Testimony Because Of His Earlier Conclusion That She Did Not Suffer From Fibromyalgia**

Plaintiff contends that the ALJ erred by finding her subjective testimony regarding her symptoms less than fully credible. (MSPC at 15). When assessing the credibility of a claimant, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Initially, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. (Id.). Then, if there is, in order to reject the testimony, the ALJ must make specific credibility findings. (Id.). In assessing the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." Turner, 613 F.3d at 1224 (internal quotations omitted). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately or

18

1  unexplained failure to pursue treatment or follow treatment.

2  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

3  Additionally, the ALJ may discredit the claimant's testimony

4  where his normal activities can transfer to the work setting.

5  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

6  1999).

7

8      Here, the ALJ's finding at step two that Plaintiff did not

9  suffer from the severe medically determinable condition of

10  fibromyalgia necessarily tainted his evaluation of Plaintiff's

11  subjective testimony regarding her pain and physical limitations.

12  First, in rejecting Plaintiff's subjective testimony, the ALJ

13  explained that "[t]he objective evidence does not support the

14  claimant's allegations" and "there is simply not enough evidence

15  of debilitating impairments to make the allegations readily

16  believable." (AR 22). According to the ALJ, "the consultative

17  examiner's findings undermin[ed Plaintiff's] allegations[,]" and

18  a July 2010 MRI of Plaintiff's cervical spine "showed no signs of

19  active radiculopathy or myopathy." (Id.). The ALJ found "all

20  examining and reviewing physicians provided assessments in no way

21  consistent with [Plaintiff's] account[]" of her symptoms and

22  limitations (Id.).

23

24      This analysis mirrors the ALJ's reasoning at step two

25  regarding Plaintiff's fibromyalgia and is similarly problematic.

26  As discussed above, there was ample medical evidence establishing

27  that Plaintiff suffered from fibromyalgia, including the opinions

28  of Plaintiff's treating physicians. Furthermore, consultative

19

physician Dr. Lin acknowledged Plaintiff's fibromyalgia diagnosis
and symptoms.   That Plaintiff's July 2010 cervical spine MRI
revealed no active radiculopathy or myopathy was irrelevant to
the credibility of her subjective pain and fibromyalgia testimony
given the nature of her impairment.  See, e.g., Benecke, 379 F.3d
at 594; Coleman v. Astrue, 423 Fed. Appx. 754, 755 (9th Cir. Mar.
24, 2011) (ALJ's rejection of plaintiff's subjective testimony
based on absence of objective evidence was improper insofar as
plaintiff's pain was related to fibromyalgia).

Second, the ALJ noted that Plaintiff had "only largely
routine treatment[]" and "treatment records reflect[ed] only
standard medical treatment for common, ordinary medical
problems."  (AR 23).  According to the ALJ, "[o]verall, treating
physicians did not see fit to refer [Plaintiff] to specialists."
However, these conclusions lack support in the Administrative
Record, which is replete with evidence that Plaintiff was
consistently and heavily medicated due to her fibromyalgia and
was also referred to fibromyalgia specialists.   Petitioner was
treated with, inter alia, Savella (AR 523, 563-64, 615-16),
Ultram (467, 573), Vicodin (id.), Neurontin (AR 409, 467, 523),
Tramadol (AR 326, 409), Robaxin (409, 467), Soma (AR 523, 616-
17), Baclofen (AR 523) and Flexiril (AR 409), all fibromyalgia or
pain medications.   Plaintiff therefore followed a recommended
course of treatment, which, in the case of a disease like
fibromyalgia, does not include surgery or other more radical
options.  See, e.g., Graf v. Astrue, 2011 WL 891104, at *4 (C.D.
Cal. Mar. 11, 2011); Gillett v. Astrue, 2008 WL 5042848, at *3

1   (C.D. Cal. Nov. 25, 2008) ("[T]here is no surgical or other cure

2   for fibromyalgia . . . ."). Because a plaintiff "cannot be

3   discredited for failing to pursue non-conservative treatment

4   options where none exist," Lapierre-Gutt v. Astrue, 382 Fed.

5   Appx. 662, 664 (9th Cir. June 9, 2010), the ALJ's conclusion was

6   improper.

7

8       With respect to the ALJ's claim that Plaintiff was never

9   referred to specialists, there is no doubt that Dr. Balacuit

10  referred Plaitniff to Dr. Buhay, a rheumatologist and a

11  specialist, in or around August 2008.  (AR 306).  Dr. Balacuit

12  also obtained a neurological consult from Dr. Wogensen, a

13  specialist, while Plaintiff was admitted to Methodist Hospital in

14  July 2010.  (AR 535).  Additionally, Plaintiff sought treatment

15  from a second rheumatologist, Dr. La, in September 2010. (See AR

16  65-66, 615-17).  Thus, the ALJ's proffered reason is not

17  supported by the record.

18

19     Third, the ALJ found that Plaintiff made inconsistent

20  statements that undermined her credibility.  (Id.).  The lone

21  inconsistency cited by the ALJ was an April 2010 medical record

22  from Plaintiff's orthopedist, Dr. Shane Pak, indicating that

23  Plaintiff suffered lower back pain resulting from "lifting a

24  heavy object[,]" (AR 590), and Plaintiff's subsequent testimony

25  that she could not lift more than five pounds at a time.  (AR 75-

26  76).  However, that Plaintiff suffered lumbar spine pain in April

27  2010 after attempting to lift a heavy object is consistent with

28  her testimony that she could lift only five pounds.  Indeed, an

1  individual is not fit to lift heavy objects if, every time she

2  attempts to do so, she suffers severe pain and must seek

3  treatment from an orthopedist.

4

5      Fourth, the ALJ found Plaintiff's testimony unreliable

6  because she was able to engage in daily activities, including

7  washing dishes and clothes, cooking, cleaning, driving and

8  grocery shopping. (AR 23). The ALJ explained that although he

9  was "not saying that [Plaintiff's] activities, by themselves,

10 necessarily equate with work activity or show the ability to

11 engaged in work . . . , the [Plaintiff's] activities suggest that

12 [she] has a better physical and mental capacity than she has

13 stated in the testimony." (Id.). An ALJ may consider, inter

14 alia, a Plaintiff's daily activities in assessing the credibility

15 of her testimony. See Lingenfelter v. Astrue, 504 F.3d 1028,

16 1040 (9th Cir. 2007). Here, however, the ALJ stated that

17 Plaintiff's daily activities, by themselves, did not establish

18 Plaintiff's ability to engage in substantial gainful employment.

19 (AR 23). He therefore implied that Plaintiff's daily activities

20 weighed against her credibility only when viewed in conjunction

21 with the other evidence contradicting her testimony. Because

22 much (if not all) of this other evidence was rooted in the ALJ's

23 improper decision at step two concerning Plaintiff's

24 fibromyalgia, his evaluation of Plaintiff's daily activities was

25 necessarily influenced by improper considerations.

26

27     In sum, the ALJ's faulty determination at step two directly

28 influenced his assessment that Plaintiff's testimony was less

1   than credible.   Indeed, the ALJ recycled much of his analysis

2   rejecting Plaintiff's fibromyalgia in evaluating her subjective

3   testimony.     Accordingly,   rejecting   Plaintiff's   subjective

4   testimony was improper.

5

6                                    **VI.**

7                               **CONCLUSION**

8

9       For the foregoing reasons, the decision of the Agency is

10  REVERSED and REMANDED for further proceedings consistent with

11  this Order.

12

13      IT IS SO ORDERED.

14

15  DATED:  December 10, 2013

16                               _____/S/_____
                                 SUZANNE H. SEGAL
17                               UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28